IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDY LYNNE OPPENHEIM,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISIONER OF SOCIAL SECURITY,<br><br>    Defendant. | HONORABLE ROBERT B. KUGLER<br><br>Civil Action<br>No. 18-10217 (RBK)<br><br>**OPINION** |

APPEARANCES:

Alan H. Polonsky
POLONSKY AND POLONSKY
512 S White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Theresa Ann Casey
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street
Philadelphia, PA 19123
    Attorney for Defendant

**KUGLER,** District Judge:

**I. INTRODUCTION**

In this action, Plaintiff Wendy Lynne Oppenheim (hereinafter "Plaintiff") seeks review pursuant to 42 U.S.C. § 405(g) of the Commissioner of the Social Security Administration's (hereinafter "Defendant") denial of her application for disability benefits under Title II of the Social Security Act.

Plaintiff claims she is disabled due to several conditions including degenerative disc disease of the lumbar and cervical spine, bilateral knee osteoarthritis, bilateral meniscal tears and fibromyalgia. On September 11, 2017, Administrative Law Judge Michael Hertzig (hereinafter "ALJ Hertzig" or "the ALJ") issued a written decision denying Plaintiff Social Security benefits for the period beginning December 31, 2011 to December 31, 2016.

In the pending appeal, Plaintiff argues that the ALJ's decision must be remanded on two grounds. First, she argues that the ALJ's conduct during the hearing reflected bias which precluded her from having a fair and impartial evaluation of her case. Second, Plaintiff argues that the ALJ's decision at Step Four of the Sequential Evaluation Process in finding that she could return to her past work activity was not supported by substantial evidence.

For the reasons explained below, the Court finds that substantial evidence supports the ALJ's determinations and will affirm the ALJ's decision.

## II. BACKGROUND

### A. Procedural History

Plaintiff Wendy Lynne Oppenheim filed an application for social security disability benefits on June 16, 2014 alleging disability beginning on December 31, 2011, at the age of 50. [R.

at 87, 178.] Plaintiff's application was denied on initial consideration on September 10, 2014 and upon reconsideration on May 15, 2015. [Id. at 87.] After her claim was denied upon reconsideration, Plaintiff, along with her representative, Samantha Xander, of the law firm Binder & Binder, appeared for a hearing before ALJ Hertzig on July 31, 2017. [Id.] During the hearing, the ALJ received testimony from Plaintiff and Vocational Expert Adina Levitan. [Id.] The ALJ denied benefits in a September 11, 2017 opinion. [Id.] On April 6, 2018 the Appeals Council denied Plaintiff's request for review. [Id. at 1-6.] This appeal followed.

**B. Factual Background and Relevant Medical Evidence**

Plaintiff was born on April 26, 1961 and is currently 58 years old. [Id. at 212.] Plaintiff earned a Bachelor's degree in psychology and a Master of Social Work degree from Rutgers University – Camden. [Id. at 32-33.] From May 1994 to December 2011, she was employed as a mental health therapist. [Id. at 217.] She alleges that she has been disabled and unable to work since December 31, 2011 due to pain and discomfort emanating from migraines, knee and spine impairments, and fibromyalgia. [Id. at 34, 215, 291.]

<u>1. Primary Care Physician Reports</u>

The record indicates that Plaintiff met with her primary care physician, Vivienne Matalon, M.D. beginning in March 2012.

[Id. at 352.] Up until April 2015, Dr. Matalon reported unremarkable findings concerning Plaintiff's musculoskeletal system including a normal gait and normal range of motion in her neck, spine, pelvis and extremities. [Id. at 339, 342, 355.] Dr. Matalon reported that Plaintiff had knee, lower back and neck pain in April 2015. [Id. at 327-238.]

### 2. Knee Pain and Abnormalities

According to records from South Jersey Radiology Associates, Plaintiff was diagnosed with a medial meniscus tear and degenerative joint disease in her left knee following an MRI examination on February 11, 2013. [Id. at 259.] On May 24, 2013, Plaintiff met with Paul Marchetto, M.D. at the Rothman Institute (hereinafter "Rothman") complaining of left knee pain. [Id. at 369.] Dr. Marchetto confirmed that Plaintiff had been diagnosed with a medial meniscus tear in her left knee. [Id.] Dr. Marchetto stated that Plaintiff failed to follow through with physical therapy and decrease her dog-walking. [Id.] Dr. Marchetto reported a positive McMurray's test result,[1] treated Plaintiff with lidocaine for pain management and advised her to follow up with physical therapy. [Id.]

On March 14, 2015, Plaintiff was diagnosed with a medial meniscus tear, arthritic changes, patellar chondromalacia,

---

[1] A McMurray's test is an orthopedic examination used to identify tears in the meniscus. A "positive" McMurray's test indicates a meniscal tear.

4

effusion and popliteal cyst in her right knee. [Id. at 254.] Later, on July 7, 2014, Dr. Marchetto reported an antalgic gait, joint tenderness, and positive McMurray's test result. [Id. at 542.] The physical examination also yielded positive varus stress, patellar compression and patellar inhibition test results. [Id. at 542.] He also reported abnormal muscle strength and quad atrophy. [Id.] Dr. Marchetto diagnosed Plaintiff with moderate degenerative joint disease in her right knee and advised Plaintiff to consider a weight loss plan and nonoperative treatment including anti-inflammatories and viscosupplementation. [Id. at 543-544.]

Plaintiff began seeing Mitesh Patel, M.D. at Rothman on August 8, 2014. [Id. at 539.] Dr. Patel diagnosed Plaintiff with bilateral osteoarthritis and degenerative meniscal tearing. [Id. at 540.] Dr. Patel reported trace effusion, mild retropatellar crepitus, tenderness, bilateral pain during McMurray's tests, negative drawer signs[2] and stability during valgus and varus stress tests. [Id. at 540.] Plaintiff was instructed to continue taking current pain medications and was authorized to receive Orthovisc viscosupplement injections to treat her knee pain. [Id.]

---

[2] Drawer tests (or signs) are orthopedic examinations used to identify injuries in the cruciate ligaments of the knee.

5

On December 17, 2014, Dr. Patel reported that the Orthovisc injections were ineffective in managing Plaintiff's pain. [Id. at 343.] A physical examination demonstrated bilateral tenderness, moderate retropatellar crepitus, limited range of motion, stability to varus and valgus stress testing, negative drawer signs and negative McMurray's and Lachman tests.[3] [Id.] Dr. Patel administered cortisone injections in both knees. [Id.]

### 3. Back Pain and Spinal Abnormalities

An MRI of Plaintiff's cervical spine on March 14, 2014 showed multilevel disc bulges and protrusions with uncovertebral joint hypertrophy resulting in foraminal narrowing. [Id. at 255-256.] Concurrently, imaging of Plaintiff's lumbar spine showed developmental narrowing of the lumbar canal exacerbated by Grade I anterolisthesis[4] of the third lumbar vertebra (hereinafter "L3") on the fourth lumbar vertebra (hereinafter "L4"). In addition, imaging showed moderate narrowing of the canal at L3-L4 and mild narrowing at additional levels. Imaging also showed focal disc protrusions with foraminal disc protrusions and facet arthropathy resulting in foraminal narrowing abutting the

---

[3] A Lachman test is an orthopedic examination used to identify injuries to the anterior cruciate ligament in the knee. A "negative" Lachman test indicates that there is no injury to the anterior cruciate ligament.

[4] Anterolisthesis is a spinal condition in which the upper vertebral body slips forward onto the vertebra below. Grade I is the mildest form of anterolisthesis.

6

exiting right L3 nerve root with encroachment upon additional exiting nerve roots.

An April 6, 2015 x-ray of Plaintiff's cervical spine indicated normal alignment with reversal of lordosis and mild discogenic changes and facet joint degeneration. Lumbar x-rays demonstrated a slight increase in Grade I anterolisthesis of L3 on L4 and mild lower lumbar discogenic changes.

### 4. Consultative Examination

Juan Carlos Cornejo, M.D. performed a consultative neurological examination on Plaintiff on March 31, 2015. [Id. at 291.] He diagnosed Plaintiff with chronic neck and lower back pain, mild cervical and lumbar degenerative disc disease as per x-rays and chronic migraine history. [Id. at 295.] Dr. Cornejo noted that Plaintiff complained of daily migraines, fibromyalgia, neck and back pain, numbness and tingling in her extremities, and difficulty moving. [Id. at 291-292.] Dr. Cornejo reported that Plaintiff walked with a normal gait, was comfortable sitting during the evaluation and was able to get on and off the examining table without assistance or difficulty. [Id. at 293-294.] Plaintiff had full range of motion in her upper and lower extremities but limited range of motion in her cervical and lumbar spine. [Id. at 293.] Dr. Cornejo reported that Plaintiff was awake and alert during the evaluation and displayed no mental abnormalities. [Id. at 295.]

Dr. Cornejo concluded that despite medical treatment, Plaintiff still had continuing subjective symptoms. [Id.] Based on these symptoms, Dr. Cornejo opined that she would have difficulty with prolonged walking and standing. [Id.] Furthermore, Dr. Cornejo stated that Plaintiff may have difficulty turning and bending her neck and lower back. [Id. at 295.]

### 5. Emergency Room Visit – May 15, 2015

On May 15, 2015, Plaintiff sought emergency room treatment for numbness in her arm and leg. [Id. at 376.] Emergency room physicians diagnosed her with paresthesia following an unremarkable CT scan showing no acute intracranial abnormality. [Id. at 376-378.]

### 6. Review with State Physician

Mary McClaron, M.D. filed a report concerning Plaintiff on May 14, 2015. [Id. at 77-83.] Dr. McClaron confirmed mild degenerative disc disease and degenerative joint disease in Plaintiff's cervical and lumbar spine. [Id. at 78.] She also noted that Plaintiff had a normal gait and that she could carry twenty pounds occasionally and ten pounds frequently. [Id.] Dr. McClaron stated that Plaintiff could sit for six hours in an eight hour workday and stand/walk for six hours in an eight hour workday. [Id.]

### 7. ALJ Hearing before Michael Hertzig

Plaintiff and her attorney representative, Samantha Xander, of the law firm Binder & Binder, appeared before ALJ Hertzig on July 31, 2017. [Id. at 24.] The ALJ noted that some of Plaintiff's records from Rothman were not submitted until three days before the hearing. [Id. at 26.] The ALJ expressed frustration and asked Ms. Xander why the records were delayed. [Id. at 27-28.] This conversation lasted for quite some time and the ALJ asked both Ms. Xander and Plaintiff for an explanation. [Id. at 26-29, 37-40.]

At the hearing, Plaintiff testified that she stopped working in 2011 but continued to receive $240 a year from her brother's partner. [Id. at 34-35.] Plaintiff then articulated her various medical ailments to the ALJ: pain in her knees, lower back and neck, as well as symptoms related to fibromyalgia and migraines. [Id. at 47-52.] Plaintiff testified that she has difficulty walking long distances, cooking and shopping. [Id. at 50-58.]

Vocational Expert Adina Levitan also testified at the July 31, 2017 hearing. [Id. at 60.] Ms. Levitan characterized Plaintiff's past relevant work as a therapist and confirmed that a person of Plaintiff's age and educational background could perform light or sedentary work. [Id. at 61-62.]

### 8. ALJ Decision

ALJ Hertzig issued a written decision on September 11, 2017, ultimately finding that Plaintiff was not disabled within the meaning of the Social Security Act, as he made the following findings:

1. Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2016.

2. Plaintiff did not engage in substantial gainful activity since December 31, 2011, the alleged onset date (20 C.F.R. § 404.1571, et seq.)

3. Plaintiff has the following severe impairments: mild lumbar/cervical degenerative disc disease; bilateral knee osteoarthritis; left knee meniscal tear; and fibromyalgia (20 C.F.R. § 404.1520(c)).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: Plaintiff can occasionally balance, stoop, kneel, crawl, crouch and climb ramps, stairs, ladders, ropes and scaffolds.

6. Plaintiff was capable of performing past relevant work as a therapist (DOT 045.107-050). This work did not require the performance of work related activities precluded by the claimant's residual functional capacity.

7. Plaintiff was not under a disability, as defined in the Social Security Act.

[Id. at 89-93.] In reference to whether Plaintiff's impairments meet the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Finding 4), the ALJ stated that Plaintiff's spine disorders were not severe enough to meet the requirements of Listing 1.04. [Id. at 90.] Further, in reference to whether Plaintiff's knee impairments reached the severity level of a listed Major Joint Dysfunction, 1.02, the ALJ noted that "the record failed to illustrate extreme walking limitations or extreme loss in upper extremity function." [Id.] The ALJ also evaluated Plaintiff's fibromyalgia by considering the "nature and severity of the claimant's symptoms under the guidelines set forth in SSR 12-2p." [Id.]

In determining Plaintiff's residual functional capacity (Finding 5), the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Id.] The ALJ considered Plaintiff's testimony at the hearing regarding her symptoms and determined that the "intensity,

persistence, and limiting effects of these symptoms were not entirely consistent" with the medical evidence in the record. [Id. at 91.] In determining that Plaintiff had the RFC to perform light work, the ALJ noted that "[p]hysical examinations were generally unremarkable; diagnostic tests revealed mostly mild-to-moderate findings; medication decreased the claimant's pain; and [the claimant] engaged in relatively normal daily activities." [Id. at 93.]

Regarding Plaintiff's past relevant work (Finding 6), the ALJ adopted the VE's testimony that Plaintiff would be able to return to her past relevant work as a therapist (DOT 045.107-050) with the limitations listed in Finding 5. [Id.]

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F.App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d

287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).

**IV. DISCUSSION**

**A. Alleged Bias**

Plaintiff argues that the ALJ's conduct during the hearing reflected bias which precluded her from having a fair and impartial evaluation of her case. [Pl. Br. at 11-15.] She asserts that ALJ Hertzig was prejudiced against her representative's firm, Binder & Binder, when he expressed confusion and frustration regarding duplicate records and the late submission of evidence from Rothman. [Id.] Moreover, Plaintiff argues that the ALJ "demonstrated overt hostility" to her representative. [Id. at 15.] In Plaintiff's view, "where the record shows that an [ALJ] has an issue with the claimant's representative, it will have to have an impact on how he views the evidence." [Id.]

Those claiming disability benefits have a right to a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir.

1995)(citing Richardson, 402 U.S. at 400–01). "Essential to a fair hearing is the right to an unbiased judge. The due process requirement of an impartial decisionmaker is applied more strictly in administrative proceedings than in court proceedings because of the absence of procedural safeguards normally available in judicial proceedings." Id. (citing Hummel v. Heckler, 736 F.2d 91, 93 (3d Cir. 1984)).

An individual is denied a full and fair hearing "where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the claimant." Bordes v. Comm'r of Soc. Sec., 235 F.App'x 853, 857–58 (3d Cir. 2007) (citing Ventura, 55 F.3d at 902–03). However, bias is not proven by terseness or indications of annoyance. See Fraser v. Astrue, 373 F.App'x. 222, 225 (3d Cir. 2010) (finding that even assuming that "the ALJ was rather brusque, there is no indication that there was any conflict of interest or inability to render a fair judgment."). Moreover, the Supreme Court has held that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or partiality. Liteky v. United States, 510 U.S. 540, 555–56 (1994).

The Court has carefully reviewed the transcript of the hearing with special attention paid toward the discussion between the ALJ and Plaintiff's representative. [R. at 22-63.]

14

Although it is difficult to assess the ALJ's demeanor and tone from the record, the transcript suggests that the ALJ was frustrated with Plaintiff's representative and the manner in which evidence was submitted. [Id. at 26-29.] Notwithstanding the ALJ's frustration with the representative, nothing in the record or Plaintiff's brief suggests that Plaintiff was deprived of the opportunity to present evidence in support of her claim. Furthermore, the record does not suggest that the ALJ exhibited bias or animus against Plaintiff.

For example, the ALJ allowed Plaintiff to fully discuss her alleged conditions, the medical records and her work history. Moreover, despite his frustration with Plaintiff's representative, the ALJ admitted the records from Rothman and considered them throughout his decision. [Id. at 29, 90-92.] By admitting and referring to these additional medical records, the ALJ displayed his commitment toward fully developing the factual record. See Siravo v. Comm'r of Soc. Sec., 2017 WL 1246347, at *7 (D.N.J. Apr. 4, 2017) (rejecting argument alleging bias despite indications of frustration and annoyance because ALJ allowed factual record to develop and allowed Plaintiff to speak at length). Therefore, based on the record and relevant case law, the Court finds no evidence that the ALJ was biased against Plaintiff.

**B. Past Relevant Work**

Plaintiff contends that the ALJ erred in concluding that Plaintiff could return to her past relevant work. [Pl. Br. at 16.] Specifically, Plaintiff argues that her position as a therapist does not qualify as past relevant work because she did not earn enough to deem it substantial gainful activity (hereinafter "SGA"). [Id.] Plaintiff argues that "special rules apply for someone who is self-employed" and that the record does not support the ALJ's conclusions. [Id. at 16-17.]

For the following reasons, the Court does not agree. Under the relevant Social Security regulations, past "work experience applies when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a).[5] Work may be substantial gainful activity "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). Plaintiff reported that she earned $915.33 per month as a therapist in 2002. This monthly

---

[5] In Title II cases in which the "claimant's disability insured status was last met prior to adjudication, the work performed for the 15-year period preceding the date the title II disability insured status requirement was last met would generally be considered relevant." SSR 82-62, 1982 WL 31386 at *2. Here, the 15-year period began on December 31, 2001.

16

income exceeds the SGA level for 2002 ($780 per month).[6] Plaintiff seems to imply that one year of income exceeding the SGA threshold is insufficient. [Pl. Br. at 16.] However, a reading of the regulation does not indicate that one must exceed the SGA level for a certain number of years before their work qualifies as past relevant work. 20 C.F.R. § 404.1565(a); see also Rodriguez-Soto v. Comm'r of Soc. Sec., 2019 WL 1349770, at *5 (D.N.J. Mar. 26, 2019) (finding that plaintiff's job qualifies as past relevant work even though his earnings only exceeded the SGA level for 2007 through 2008).

Moreover, Plaintiff's disability report indicates that she worked as a mental health therapist until December 2011 and made $11,000 per year. [R. at 217.] In addition, Plaintiff's representative conceded that Plaintiff's past work as a therapist was past relevant work. [Id. at 29.] Thus, Plaintiff's job as a therapist qualifies as past relevant work.

Plaintiff's argument that the ALJ should have applied the analysis set forth in 20 C.F.R. § 404.1575 for self-employed individuals is neither fully articulated nor supported by evidence in the record. [Pl. Br. at 16.] Plaintiff concedes that "from the record, we simply cannot determine whether or not

---

[6] These figures were cited in Defendant's brief with citation to the record and relevant regulations. [Def. Br. at 11.] Plaintiff concedes that her earnings were above the SGA level in 2002. [Pl. Br. at 16.]

17

[Plaintiff's work as a therapist] constituted substantial gainful work activity." [Pl. Br. at 16-17.] However, Plaintiff bears the burden of demonstrating that her impairments prevent her from performing her past work. See Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) ("The claimant bears the burden of demonstrating an inability to return to her past relevant work"). Plaintiff failed to meet her burden in proving that her past work as a therapist should not be considered past relevant work. Consequently, this failure automatically results in the denial of benefits. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

## V. CONCLUSION

For the reasons set forth above, the ALJ's decision will be affirmed. An accompanying Order will be entered.

July 23, 2014
Date

ROBERT B. KUGLER
U.S. District Judge